IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

JOHN SIGLEY,

     **Plaintiff,**

v.                                   Civ. Action No. 1:22-CV-52
                                          (Chief Judge Kleeh)

ND PAPER, LLC, d/b/a
ND PAPER/FAIRMONT, LLC DIVISION,

     **Defendant.**

---

## MEMORANDUM OPINION AND ORDER

Pending before the Court are cross motions for summary judgment. ECF Nos. 27, 28. The motions are fully briefed and ripe for review. For the reasons discussed herein, the defendant's motion for summary judgment is **GRANTED** [ECF No. 28], the plaintiff's motion for summary judgment is **DENIED** [ECF No. 27], and the case is **DISMISSED WITH PREJUDICE.**

## I.   FACTS

Defendant ND Paper, LLC, d/b/a ND Paper/Fairmont, LLC Division ("ND Fairmont") operates a paper mill in Fairmont, West Virginia. ECF No. 1, Compl. ¶ 3. In August of 2021, Plaintiff John Sigley, ("Sigley") applied to work for ND Fairmont as a material handler. Id. ¶ 7; ECF No. 28-9, Ex. 9, Response to Request for Admission ("RRFA") No. 8. A material handler performs inspections of incoming product and records test results; sorts materials;

removes wires; reports unsafe work conditions; must have the ability to operate a fork and bale clamp truck, and other heavy equipment; and must be able to list, push, stoop, and stand for long periods of time and lift up to 30 pounds. ECF No. 28-1, Ex. 1, Job Posting. A successful candidate "[m]ust model ND Paper's values and achieve results through safe work practices, cross-functional participation, manufacturing excellence, integrity, and respect for others." Id.

When asked in the employment application to identify any medical conditions, Sigley "elected not to divulge his confidential, medical information before his hire." Id. ¶ 10. On August 26, 2021, ND Fairmont offered Sigley a job "conditioned on his passing a background check and physical." Id. ¶ 12. ND Fairmont also conditioned the offer on a promise that "all information provided to [ND Fairmont] in . . . pre-hire communications is truthful, accurate, and complete, and that [Sigley has] not withheld any information that would materially impact [ND Fairmont's] decision to hire [Sigley]." ECF No. 28-2, Ex. 2, Offer of Employment. Sigley accepted the offer. Compl. ¶ 13. Sigley underwent the physical on September 8, 2021, and passed. Id. ¶¶ 14-17; ECF No. 28-5, Ex. 5. Sigley signed the Authorization to Disclose Health Information to his "healthcare provider/s and Industrial Therapy Solutions, as well as with human resources,

safety personnel, and/or legal representative for this employer." Id. He also "underst[ood] that giving false, incomplete, incorrect or misleading information will be cause for termination of [his] employment." Id. at 6. On the Health History Questionnaire, Sigley checked "never" in response to whether he has a "back fracture, strain, sprain, pain, stiffness, weakness, scoliosis, disc injury, disc rupture, arthritis, or injury." Id. at 7. Sigley included no information in response to the prompt under medical history that inquired about any past or present surgeries, hospitalizations, or conditions for which he was treated. Id. at 9.

Sigley began work at the pulp mill on September 13, 2021 as a material handler, and continued to work there for over a month with no issue. Compl. ¶ 18. On October 28, 2021, Sigley emailed Joyce Hardway ("Hardway"), ND Fairmont's Human Resource Manager, with a subject line "Sleep deprivation" and stated he would not be coming to work that day because he did not sleep the night before. ECF No. 28-6, Ex. 6. Thereafter, he sent Hardway a text message requesting a meeting. ECF No. 28-7, Hardway Aff. ¶ 5. The two agreed to meet on October 29, 2021, at 10:30 a.m. Id. On October 29, 2021, Sigley approached Hardway at the ND Fairmont facility and requested they talk. Id. ¶ 6. Sigley voluntarily offered information about his "disability" and "stated that, prior to accepting employment with [ND Fairmont], he had been working with

a company that helps place workers with disabilities, but that he instead had received and accepted [ND Fairmont's] offer of employment." Id.

The two met that morning as previously planned, and the Environmental Health & Safety Manager Justin Darrah joined them. Id. ¶ 7. "Sigley continued to voluntarily disclose medical information and history, informing [Hardway] and Mr. Darrah that he had undergone three back surgeries in the last two years, and that he had a metal rod in his back." Id. From this medical history, Sigley suffered back spasms, although he admitted he had not told Industrial Therapy Solutions ("ITS") about his back pain. Id. ITS confirmed that Sigley failed to inform them of his medical history concerning his back condition at his post-offer physical examination. Id. ¶ 8; see also ECF No. 28-11, Ex. 11. Instead of disclosing this information to ITS, Sigley had submitted a falsified Informed Consent Checklist and Health History Questionnaire. Hardway Aff. at ¶ 8. Upon request by Hardway, ITS sent Sigley's falsified Informed Consent Checklist and Health History Questionnaire to Hardway and Darrah following the October 29th meeting where Sigley had voluntarily offered the foregoing medical information regarding his back condition. Id.

Based upon the falsification of these records, Sigley was terminated from ND Fairmont on November 2, 2021. Id. ¶ 9. Until

MEMORANDUM OPINION AND ORDER

his termination on November 2, 2021, Sigley "performed his job duties satisfactorily or better." Id. ¶ 19. On June 24, 2022, Sigley, by counsel, filed his Complaint against ND Fairmont alleging one count of disability discrimination under the Americans with Disabilities Act of 1990 ("ADA"). Sigley alleges ND Fairmont improperly made medical inquiries of him during the application process, and he properly refused to comply with those requests. Compl., ¶ 21. Sigley alleges he is a person with a disability that the ADA protects, and that his employment termination was motivated by his disability. Id. ¶¶ 36-37. ND Fairmont's termination of Sigley was "willful, intentional, and reckless." Id. ¶ 37. Due to his termination, Sigley has suffered losses in wages, emotional harm and inconvenience. Id. ¶ 24.

It is undisputed that Sigley understood the terms of ND Fairmont's offer letter that he signed. ECF No. 28-9, Ex. 9, RRFA No. 8. It is undisputed that Sigley had back surgeries performed prior to September 8, 2021. Id. RRFA Nos. 25-26. It is also undisputed that Sigley failed to inform the physical therapist about any prior surgeries and that he had never seen a doctor for his back prior to September 8, 2021. Id. RRFA Nos. 22-24. Sigley admits that Ms. Hardway told him that he was being terminated because he "lied on his application." Id. RRFA No. 28. It is

undisputed that Sigley had performed all of his job functions
without accommodation.

## II.  LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant
"bears the initial responsibility of informing the district court
of the basis for its motion, and identifying those portions of
'the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any,' which
it believes demonstrate the absence of a genuine issue of material
fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The
nonmoving party must "make a sufficient showing on an essential
element of its case with respect to which it has the burden of
proof." Id. at 317–18. Summary judgment is proper "[w]here the
record taken as a whole could not lead a rational trier of fact to
find for the non-moving party, there [being] no 'genuine issue for
trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475
U.S. 574, 587 (1986). The Court views the evidence in the light
most favorable to the non-moving party and draws any reasonable
inferences in the non-moving party's favor. See Fed. R. Civ. P.

56(a); see Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

### III. DISCUSSION

The ADA protects qualified individuals with disabilities from disparate treatment by their employer. Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment" 42 U.S.C. § 12112(a). To prove a prima facie case of wrongful discharge, a plaintiff must establish "(1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." Coursey v. Univ. Md. E. Shore, 577 F. App'x 167, 174 (4th Cir. July 1, 2014) (quoting Haulbrook v. Michelin N. Am., 252 F.3d 696, 702 (4th Cir. 2001)).

The issue at bar in the parties' cross motions for summary judgment is somewhat narrow. Sigley maintains he passed the musculoskeletal screening and function testing, which was the assessment tailored to his capability to perform the work for which ND Fairmont hired him, and the "medical questionnaire sought

irrelevant, overboard, non-essential matter[s] unrelated to Sigley's actual abilities to perform the job the Defendant hired him to do." ECF No. 30 at 12. Sigley asserts ND Fairmont fired him using the confidential information provided in the medical questionnaire which ND Fairmont unlawfully obtained, absent to determine a reasonable accommodation for Sigley, and because he had a back injury. Id.; ECF No. 27 at 3. ND Fairmont, however, maintains it fired Sigley because he was found to be dishonest. ECF No. 33 at 4; see also RRFA No. 28 (Sigley admitting that Ms. Hardway told him that he was being terminated because he "lied on his application.").

At the crux of the motions for summary judgment is whether, after Sigley had voluntarily shared his confidential medical information to Ms. Hardway on October 29, 2021, the ADA prohibits Ms. Hardway from inquiring about Sigley's medical information included in the Informed Consent Checklist and History Questionnaire he had signed pre-employment. As this issue is dispositive of Sigley's claim, the Court need not address the parties' other arguments in favor of, and against, Sigley's ADA discrimination claim.

SIGLEY V. ND PAPER, LLC                                    1:22CV52

MEMORANDUM OPINION AND ORDER

**A. Sigley is not Protected by the Confidentiality Provision of the ADA because he Voluntarily Disclosed his Medical Information.**

Generally, covered entities are precluded from "conduct[ing] a medical examination or mak[ing] inquiries of a job applicant" to determine "whether such applicant is an individual with a disability" or gauging "the nature or severity of such disability." 42 U.S.C. § 12112(d)(1)-(2). However, there are exceptions to the ADA's prohibition against medical examinations and inquiries. "A covered entity may make preemployment inquiries into the ability of an applicant to perform job-related functions." 42 U.S.C. § 12112(d)(2)(B).

> A covered entity may require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant, and may condition an offer of employment on the results of such examination, if--
> (A) all entering employees are subjected to such an examination regardless of disability;
> (B) information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record, except that--
> (i) supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations;
> (ii) first aid and safety personnel may be informed, when appropriate, if the disability might require emergency treatment; and
>                         . . .

9

> (C) the results of such examination are used
> only in accordance with this subchapter.

42 U.S.C. § 12112(d)(3). This "medical examination" made conditional to an offer of employment is exactly what ND Fairmont did here by implementing its post-offer examination by ITS and requiring candidates to complete the Informed Consent Checklist and Health History Questionnaire. Sigley does not argue that the examination or questionnaire were unlawful themselves; instead, he argues Hardway is precluded by § 12112(d)(3) from requesting and reviewing Sigley's pre-offer documents because they included his confidential medical history.

After an employee has begun working, an employer may not require a medical examination nor make inquiries into an employee's disability unless the exam or inquiry is shown to be "job-related and consistent with business necessity." Wiggins v. DaVita Tidewater, LLC, 451 F.Supp.2d 789, 801 (E.D. Va. 2006) (citing Rohan v. Networks Presentation LLC, 175 F.Supp.2d 806, 813 (D. Md. 2001)). When an employee voluntarily discloses confidential medical information, the confidentiality requirements of § 12112(d)(3) and 29 C.F.R. § 1630.14 do not apply. See Cash v. Smith, 231 F.3d 1301, 1307 (11th Cir. 2000) ("The statute [42 U.S.C. § 12112(d)] and regulation [29 C.F.R. § 1630.14(c)] cited by Cash do not govern voluntary disclosures initiated by the

employee. . . ."); E.E.O.C. v. Thrivent Fin. for Lutherans, 795
F.Supp.2d 840, 842 (E.D. Wis. 2011) (". . . . courts have
consistently held that the confidentiality requirements of section
102(d) do not protect medical information that is voluntarily
disclosed by the employee and, thus, is not acquired as a result
of a medical inquiry by the employer."). Indeed, when an employer
does not receive confidential medical information pursuant to §
12112(d), but receives the information another way, the ADA
confidentiality provision is not triggered. Wiggins, 451 F.Supp.2d
at 801.

Under these circumstances, ND Fairmont did not violate the
ADA because the confidentiality provision does not protect
employees' voluntary disclosures. The undisputed record shows
Sigley voluntarily disclosed his medical condition and surgical
history to Ms. Hardway at the facility, and then a second time to
Ms. Hardway and Mr. Darrah during the meeting. Sigley voluntarily
disclosed that he had undergone three back surgeries in the last
two years, and that he had a metal rod in his back. During the
same confession, Sigley explained to the HR department how he had
omitted this important medical history from his physical
examination visit with ITS. Only then did Ms. Hardway inquire
about Sigley's pre-employment documents to determine whether his
Informed Consent Checklist and Health History Questionnaire had

MEMORANDUM OPINION AND ORDER

been falsified in violation of company policy and in contravention
of Sigley's employment offer. The requested documents did not
contain any confidential medical information because Sigley
omitted any reference to his apparent conditions. Upon finding
the documentation contained false information about Sigley's
medical history and condition, Sigley's employment was terminated.
Other than bare assertions, Sigley has offered no evidence to the
contrary. No genuine issue of material fact exists on this
dispositive question which would require jury resolution.
Therefore, ND Fairmont's Motion for Summary Judgment [ECF No. 28]
is **GRANTED.**

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, ND Fairmont's Motion for Summary
Judgment [ECF No. 28] is **GRANTED** and Sigley's Motion for Summary
Judgment [ECF No. 27] is **DENIED.** All other pending motions are
**DENIED AS MOOT.** Sigley's complaint is **DISMISSED WITH PREJUDICE.**
The Clerk is **DIRECTED** to enter judgment in favor of the defendant,
consistent with this Memorandum Opinion and Order, and to **STRIKE**
this case from the Court's active docket.

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this
Memorandum Opinion and Order to counsel of record.

**SIGLEY V. ND PAPER, LLC**                                           **1:22CV52**

**MEMORANDUM OPINION AND ORDER**

**DATED:** September 27, 2023

_Tom S Kleeh_

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA